CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JAN 1 2 2020

JULIA C. DUDLEY, CLERK
BY:
        DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| ) | Case No. 7:18-cr-0027-MFU-4 |
| v. ) | |
| ) | |
| ALFRED LLOYD ROBRECHT, ) | |
| ) | By:  Michael F. Urbanski |
| Defendant ) | Chief United States District Judge |

## MEMORANDUM OPINION

Defendant Alfred Lloyd Robrecht, represented by counsel, seeks expungement of his criminal record and all affiliation with this criminal case in which he was indicted for health care fraud. ECF No. 108. The government responded to the motion, ECF No. 110, and a hearing was held on May 28, 2020. After the hearing, Robrecht filed a supplemental brief in support of his motion, ECF No. 116, and a second hearing was held on November 18, 2020. Robrecht also has filed a motion to proceed under a pseudonym and to seal identifying documents. ECF No. 118. For the reasons set forth below, Robrecht's motions are **DENIED**.

## BACKGROUND

On June 26, 2018, Robrecht, along with four other individuals and the East Mental Health Clinic, LLC, was indicted on one count of conspiring to commit Medicaid fraud in violation of 18 U.S.C. § 1347. ECF No. 3 at 6-7. The other defendants were indicted on seventy-two additional counts, which described specific incidents of alleged fraud. Id. at 18-31. At the time he was indicted, Robrecht was the clinical director of the East Mental Health Clinic. Id. at 3.

On August 24, 2018, the government moved to dismiss the indictment without prejudice and the court granted the motion on November 13, 2018. ECF Nos. 80, 105. In an order entered on May 14, 2019, the court noted that it had been advised that the government did not intend to pursue the matter further and the court provided notice to the parties that it was returning to the grand jury materials that had been submitted to the court for review in connection with earlier motions. ECF No. 107.

On February 13, 2020, Robrecht filed the instant motion in which he seeks expungement of his criminal record and affiliation with this criminal case. He alleges that the allegation of conspiracy to commit health care fraud has caused and continues to cause him severe economic harm and public humiliation. The investigation and indictment resulted in the closing of the East Mental Health Clinic in June 2019. Robrecht had worked at the clinic for ten years and has been unable to obtain employment since that time. He alleges that "employers neither cared that [he] was never convicted nor that the government abandoned its prosecution of him; the government's accusation is tantamount to a conviction in the eyes of a prospective employer." ECF No. 108 at 2. Although Robrecht has been unable to obtain employment with a company, corporation, or agency, he currently is self-employed.

Robrecht further alleges that the brokerage firm where he maintained an account unilaterally decided to close the account because of the indictment and that a credit card company removed him as an authorized user of a credit card he held jointly with his wife. Following dismissal of the lawsuit, he attempted to be added to the account as an authorized user but was denied because the company identified him as someone to whom they could no longer provide services. Finally, he alleges that he was detained while trying to cross the border

2

between the United States and Canada because the computer system showed him to be "under indictment and on probation."

## ANALYSIS

### I. Ancillary Jurisdiction

The Supreme Court examined the reach of ancillary jurisdiction in Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375 (1994). There, following entry of an order of stipulation and dismissal of a lawsuit without reserving jurisdiction to enforce the parties' settlement agreement, one of the parties sought enforcement of the settlement agreement, and the other party argued that the court could not intervene because it lacked subject matter jurisdiction. Id. at 377. The district court entered an enforcement order, finding it had inherent authority to do so, and the United States Court of Appeals for the Ninth Circuit affirmed, finding that a district court had jurisdiction to decide the enforcement motion under its inherent supervisory power. Id.

The Supreme Court reversed, first noting that federal courts are courts of limited jurisdiction and possess only that power authorized by Constitution and statute. Id. at 377. It is presumed that a cause lies outside the limited jurisdiction of the court and the burden is on the party seeking jurisdiction to establish it. Id. (citations omitted). The doctrine of ancillary jurisdiction recognizes a federal court's jurisdiction over some matters, which otherwise would be outside the court's jurisdiction, that are incidental to other matters properly before the court. Id. at 378. The Court next observed that generally speaking, federal courts have ancillary jurisdiction over issues for two purposes: (1) to permit disposition by a single court of claims

that are factually interdependent; and (2) to enable a court to manage its proceedings, vindicate its authority, and effectuate its decrees. Id. at 379-380 (citations omitted).

The Court found that because the lawsuit had been dismissed and the district court had not retained jurisdiction to enforce the terms of the parties' settlement agreement, the court lacked jurisdiction to adjudicate the enforcement of the agreement. The Court reasoned that the facts to be determined with regard to the breach of the settlement agreement were separate from the facts to be determined in the original suit and automatic jurisdiction over the settlement agreement was not essential to the conduct of the court's business. Thus, the district court did not have ancillary jurisdiction to enforce the terms of the settlement agreement. Id. at 381-382.

The court in Kokkonen commented that the parties essentially were seeking to enforce a contract, part of the consideration for which was dismissal of an earlier federal suit. Id. at 381. Although the federal court did not have jurisdiction to hear the claim, the parties could seek to have the agreement enforced in state court. Id. at 382.[1]

The Fourth Circuit Court of Appeals relied on Kokkonen to hold that federal courts do not have ancillary jurisdiction to grant petitions for equitable expungement. United States v. Mettetal, 714 F.App'x 230 (4th Cir. 2017) (unpublished). In that case, a petitioner sought expungement of his record of convictions after the convictions were vacated upon a finding

---

[1] While an argument could be made that the existence of a state court remedy distinguishes Kokkonen from Robrecht's situation, it is clear from the opinion that the Court did not rely on the existence of another remedy to find that the federal court did not have ancillary jurisdiction. Rather the Court simply was noting that state court was the proper forum for the parties' dispute, and in the absence of a provision in the settlement agreement that the parties wished for the court to retain jurisdiction to enforce the settlement agreement, there was no independent basis for federal jurisdiction. See discussion, Kokkonen, 114 S.Ct. at 381-382.

4

that his arrest lacked probable cause. Id. at 231. The petitioner was a physician, and he asserted that he was harassed by the local medical community and could not obtain hospital privileges because of the information about the convictions on his record. He also had been unable to obtain a handgun license. Id. at 233.

The district court denied relief, first finding that courts have the statutory power to expunge documents relating to a criminal charge only in narrow situations not applicable to the petitioner's case. Id. at 232-233. The district court next looked at Kokkonen, and cited the Supreme Court's observation that federal courts have ancillary jurisdiction only where necessary to permit disposition by a single court of claims that are factually interdependent in varying respects and degrees and to enable a court to manage its proceedings, vindicate its authority and effectuate its decrees. Mettetal, 714 F.App'x at 233 (citing Kokkonen, 511 U.S. at 379-380). The district court found that neither prong was satisfied by the request for expungement.

The Fourth Circuit affirmed, noting that neither the Constitution nor any federal statute confers upon federal courts the power to expunge criminal convictions such as those of Mettetal. Id. The court noted that ancillary jurisdiction recognizes that in some circumstances federal courts have inherent authority to resolve disputes even absent an express grant of jurisdiction. Id. at 233-234. The doctrine rests upon the notion that when "'federal jurisdiction in a principal suit effectively controls the property or fund under dispute, other claimants thereto should be allowed to intervene in order to protect their interests.'" Id. at 234 (quoting Aldinger v. Howard, 427 U.S. 1, 11 (1976)).

> In other words, ancillary jurisdiction is rooted in the view that claimants with access to federal court should not be permitted to utilize their jurisdictional

5

> grant to the detriment of parties whose claims may not be independently justiciable in federal court but are still plainly intertwined with the federal case.

Id.

Applying this understanding of ancillary jurisdiction, the court found that it did not have jurisdiction to expunge Mettetal's petition on equitable grounds, first noting that at least seven circuit courts have found that Kokkonen bars federal courts from invoking ancillary jurisdiction to expunge criminal records for purely equitable reasons. Id. at 234-235 (collecting cases). The court next noted that Mettetal argued that he had not run afoul of the law since his arrest more than twenty years earlier and that his criminal record had adverse professional and personal consequences. Id. at 235. The court found that the facts underlying his request for equitable expungement did not satisfy the first prong of Kokkonen because they were not factually dependent on the underlying criminal case but instead turned on facts collateral to or arising after the case was over. Id. (citing United States v. Wahi, 850 F.3d 296, 302 (7th Cir. 2017)). Nor would the exercise of ancillary jurisdiction satisfy the second prong of Kokkonen, because "equitable considerations which arise after the termination of court proceedings do not operate to vitiate decrees that went into effect years earlier." Id. (citing Kokkonen, 511 U.S. at 378). "In short, Mettetal's petition for equitable expungement of his criminal records does not implicate either of Kokkonen's conditions for the exercise of ancillary jurisdiction, and we join the unified front of circuit authority in rejecting his claim." Id.

In the alternative, the court found that even if it had ancillary jurisdiction to consider the claim, it failed on the merits. The court first found that cases where requests for expungement had been granted involved extreme cases, like mass arrests intended to curb the expression of civil rights. Mettetal, 714 F. App'x at 236 (citing Sullivan v. Murphy, 478 F.2d

6

938 (D.C. Cir. 1973) and United States v. McLeod, 385 F.2d 734 (5th Cir. 1967)). See also United States v. Schnitzer, 567 F.2d 536, 539-540 (2nd Cir. 1977) (citing United States v. Linn, 513 F.2d 925, 927 (10th Cir. 1975) (noting that the power to expunge is narrow and should not be routinely used by courts when a prosecution ends in acquittal, but should be reserved for unusual and extreme cases). The court also noted that the judiciary and the public have an independent interest in maintaining a full and fair account of court proceedings and the judiciary's own role in the vindication of defendants' constitutional rights and found that the interest was present in Mettetal's case. Id. at 236. Based on the foregoing, the court concluded that Mettetal was not entitled to expungement of his record. Id.

In accordance with Kokkonen and Mettetal, the court finds it lacks ancillary jurisdiction to consider Robrecht's request for expungement of his criminal record. Moreover, even if the court had ancillary jurisdiction to expunge the criminal records in Robrecht's case, the circumstances of his case are not so extreme as to warrant expungement. Were the court to adopt Robrecht's reasoning, every defendant against whom charges were dismissed would be entitled to expungement. In addition, the same concern expressed by the court in Mettetal about the need to maintain a full and fair account of court proceedings exists here. This case was dismissed by the court without prejudice after extensive briefing about delays in prosecuting the case and the judiciary and the public have an interest in keeping open the record of the proceedings.

Robrecht acknowledges that Mettetal held that federal courts are prohibited from invoking ancillary jurisdiction to expunge criminal records based on purely equitable grounds.[2] However, he advances two arguments that Mettetal is not dispositive in his case. First, he argues that his motion is based on a constitutional claim and relies on facts that are interdependent with the underlying criminal case, giving this court ancillary jurisdiction over his motion. Second, he argues that because he was never convicted of an offense, his case is not governed by Mettetal.

## II. Constitutional Claim

Robrecht contends that he is entitled to relief under the Eighth Amendment, which prohibits cruel and unusual punishment. The prohibition of cruel and unusual punishment "guarantees individuals the right not to be subjected to excessive sanctions." Miller v. Alabama, 567 U.S. 460, 469 (2012) (citing Roper v. Simmons, 543 U.S. 551, 560 (2005)). The right flows from the notion that punishment for crime should be graduated and proportioned to both the offender and the offense. Roper, 543 U.S. at 560 (quoting Weems v. United States, 217 U.S. 349, 367 (1910)). Although the primary concern of the drafters of the Constitution was to proscribe torture and other barbarous methods of punishment, it has evolved to proscribe more than physically barbarous punishments. Estelle v. Gamble, 429 U.S. 97, 102 (1976) (citations omitted). "The Amendment embodies 'broad and idealistic concepts of

---

[2] Robrecht also cites Doe v. United States, 110 F.Supp.3d 448 (E.D.N.Y. 2015), where a district court found that it had ancillary jurisdiction to order expungement of a defendant's conviction when she showed that it had a dramatic impact on her ability to work, causing her to be terminated from multiple jobs. Id. at 455. However, the district court's order of expungement was vacated and remanded by the Second Circuit, which found that the court lacked jurisdiction to order the expungement. Doe v. United States, 833 F.3d 192 (2nd Cir. 2016). The appellate court found no authority in the Federal Rules of Criminal Procedure that would allow the criminal records to be expunged and also found that the district court did not have ancillary jurisdiction to consider Doe's motion. Id., 833 F.3d at 196-200.

8

dignity, civilized standards, humanity, and decency . . . .'" against which courts evaluate penal measures. Id. (quoting Jackson v. Bishop, 404 F.2d 571, 579 (8th Cir. 1968)). "Thus, we have held repugnant to the Eighth Amendment punishments which are incompatible with 'the evolving standards of decency that mark the progress of a maturing society.'" Id. (quoting Trop v. Dulles, 356 U.S. 86, 101 (1958)).

Robrecht points out that that thirty-one states have passed statues allowing for expungement of criminal records, and he argues that the statutes are evidence that standards of decency have evolved to recognize that criminal records are sentences that punish people even when criminal charges against them have been dismissed. He also points out that federal legislation has been proposed to allow criminal record expungement but has not passed.

While the court is sympathetic to Robrecht's difficulties following the indictment and dismissal of the charges against him, the fact remains that he has been neither convicted, nor, importantly for the Eighth Amendment analysis, punished, for any crime. The Eighth Amendment does not provide an open-ended remedy for unfortunate consequences of government action or inaction. Rather, it proscribes certain types of punishment following conviction of a crime. "A punishment is '[a] sanction—such as a fine, penalty, confinement, or loss of property, right, or privilege—assessed against a person who has violated the law,' ... or 'a penalty inflicted by a court of justice on a convicted offender.'" Gonzalez v. Sessions, 894 F.3d 131, 137 (4th Cir. 2018) (citing Black's Law Dictionary (10th ed. 2014) and Webster's Third New International Dictionary 1843 (Philip Babcock Gove et al. eds., 2002)). While Robrecht asserts that it is not a leap to classify the consequences of the indictment and subsequent dismissal of the charges against him as cruel and unusual punishment, the court

disagrees and finds that it is entirely too great a leap to make. Robrecht has not been punished for a crime and therefore is not entitled to expungement of the indictment based on the Eighth Amendment's prohibition on cruel and unusual punishment.

### III. Effect of Not Having Been Convicted

Robrecht points out that in Mettetal, the court stated that "[n]either the Constitution nor any federal statute confers upon federal courts the power to expunge a criminal conviction such as Mettetal's." Mettetal, 714 F.App'x at 233. Robrecht then argues that because he was neither tried nor convicted, Mettetal is not applicable to his case. Robrecht offers no support for his position and none was found. Moreover, when this comment is read in context, it is clear that the court simply was noting that federal court jurisdiction is limited. It was not opening the door to a conclusion that it might have constitutional or statutory jurisdiction to consider a motion for expungement in a case where a defendant was not convicted.

Robrecht next argues that the court in Mettetal acknowledged that expungement was theoretically possible. Amicus counsel had argued that the court had ancillary jurisdiction to consider Mettetal's petition to expunge his record because the circuit court had previously found his arrest and conviction to be unlawful. In order to consider the argument, the court assumed without deciding that ancillary jurisdiction existed to consider Mettetal's claim on the merits but found it nevertheless failed, for the reasons discussed above. Id. at 235-236.

Robrecht then argues that because expungement is "theoretically possible," the court should consider the fact that unlike Mettetal, Robrecht was not convicted of any charge, but rather had the charge against him dismissed. He asserts that the judiciary and the public have less of an interest in preserving the record of proceedings against Robrecht than the court had

in Mettetal. However, this argument ignores the fact Mettetal made clear that this court does not have jurisdiction to grant the relief Robrecht seeks.[3] It only examined the merits of his claim in the alternative. Moreover, as discussed above, the court finds that the same issues of transparency of the public record exist in Robrecht's case, because the decision to dismiss the charge against him came after evidence and argument regarding the effect of the delay on the proceedings. See also United States v. Singleton, No. 9:18-cr-00773-DCN, 2020 WL 2087624 (D.S.C. April 30, 2020) (citing Mettetal and finding that court lacked jurisdiction to consider motion for expungement where charge was dismissed).

Finally, Robrecht argues that the United States District Court for the Eastern District of Virginia found that expungement was appropriate in United States v. Van Wagner, 746 F.Supp. 616 (E.D. Va. 1990). Robrecht is correct that the court granted expungement in that case. However, Van Wagner was decided in 1990, twenty-seven years before the Fourth Circuit issued Mettetal, and the issue of jurisdiction to determine the motion does not appear to have been raised. Additionally, the government in Van Wagner conceded that it had made a mistake in his case and further conceded that he was innocent of all charges. Van Wagner, 746 F.Supp. 616 at 620-21. While there is no indication that Robrecht will be reindicted on the charges in this case, the government has not stated that his arrest was a mistake and has made no affirmative statement as to his innocence.

At the hearing in this matter, counsel for Robrecht stated that he had sought expungement of criminal records related to state court proceedings for other clients and

---

[3] Robrecht also argues that because Mettetal is an unpublished decision, it is not binding precedent. While true, the court nevertheless finds persuasive Mettetal's discussion of the effect of Kokkonen on a court's jurisdiction to hear motions for expungement.

11

conceded that he did so pursuant to a Virginia Commonwealth statute that provides for expungement. See Va. Code § 19.2-392.2. However, without a similar federal statute, there is no statutory basis for this court to exercise jurisdiction over Robrecht's motion. The court shares Robrecht's frustration that there does not appear to exist a mechanism by which he can clear his name. However, the law is clear that the court does not have ancillary jurisdiction over his claim, and without jurisdiction, the court cannot act.

For the reasons stated above, the court finds that it does not have jurisdiction to consider Robrecht's request for expungement of his record. In the alternative, the court finds that even it if had jurisdiction to consider the request, that Robrecht has not shown that his circumstances are so unusual that they merit expunction of his record. Accordingly, Robrect's request for expungement is **DENIED**.

Robrecht's related motion to proceed under a pseudonym and to seal identifying documents, ECF No. 118, is **DENIED** for the same reasons as the motion for expungement.

An appropriate order will be entered.

It is so **ORDERED**.

Entered: 01-12-2021

Michael F. Urbanski
Chief United States District Judge